IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JON P. KRUG, | CASE NO. 1:20-CV-02280-BMB |
| Petitioner, | JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN ED SHELDON, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On October 8, 2020, Petitioner Jon P. Krug, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over this matter pursuant to § 2254(a). On October 19, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to then-Magistrate Judge David Ruiz for preparation of a Report and Recommendation. (Non-document entry of Oct. 19, 2020). On May 26, 2021, the matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 26, 2021).

Respondent Ed Sheldon, the then-Warden of Richland Correctional Institution, filed a Return of Writ on March 2, 2021. (ECF #5).[1] Mr. Krug filed a Traverse on May 3, 2021. (ECF #9).

---

[1]     As of the date of this decision, Mr. Krug is currently being held at Richland Correctional Institution. The Ohio Department of Rehabilitation and Correction's website identifies Kenneth Black as that facility's current Warden. https://drc.ohio.gov/about/facilities/richland-correctional/richland-correctional (last accessed September 19, 2023). For the sake of convenience, in the balance of this decision, I refer to Respondent as "the State."

On March 17, 2021, Mr. Krug filed a Motion to Order the State to Supplement the Record, which Judge Ruiz denied on May 20, 2021. (ECF #10).

For the reasons discussed below, I recommend the Petition be **DISMISSED** in its entirety. I further recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief.

## Procedural History

### Factual Findings of the Court of Appeals

The Eleventh District Court of Appeals, Lake County, Ohio, set forth the facts of this case on direct appeal. These factual findings "shall be presumed to be correct" and Mr. Krug has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Eleventh District determined:

> {¶ 2} In the early hours of December 30, 2007, Mr. Krug went to the Lake Effects bar in Madison, Ohio. At some point in the evening he went into an area in the bar where the bar's owner, Jason Reihner, was playing horseshoes with a group of people. Mr. Krug, wearing headphones and listening to his MP3 player, walked right into the horseshoe pit when one of the players was about to throw a horseshoe. Mr. Reihner confronted Mr. Krug and asked him to leave. He escorted Mr. Krug outside, and a fight between them erupted in the parking lot. As the two exchanged punches, a crowd gathered around them. Harold Layne, a cook at the bar, saw a knife in Mr. Krug's left hand and jumped into the fight to help Mr. Reihner. Both Mr. Layne and Mr. Reihner were stabbed. As Mr. Krug walked away, he was tackled to the ground by several bar patrons, who managed to pry the knife from his hand.

> {¶ 3} Mr. Reihner was air-lifted to the Metro Health Medical Center in Cleveland to treat the stab wound to his abdomen. His spleen and part of his pancreas were removed and he was hospitalized for two-and-a-half weeks. Subsequently, he developed a related blood clot in his lung, for which he was hospitalized for another week.

> {¶ 4} Mr. Layne, who suffered a stab wound to his abdomen that caused his intestines to protrude from his body, was air-lifted to the University Hospital in

2

Geneva. He had part of his intestines removed as a result of the stab wound and was hospitalized for two weeks.

* * *

{¶ 7} Before trial, the state filed a motion in limine to exclude evidence regarding police reports of incidents that occurred previously at the Lake Effects bar. The court granted that motion. At the jury trial, 14 witnesses testified for the state and three for the defense, including Mr. Krug himself. The court also admitted 75 exhibits introduced by the state. The state and the defendant offered different accounts of how Mr. Reihner and Mr. Layne were stabbed during the fight.

{¶ 8} **Witnesses for the State**

{¶ 9} Mr. Reihner, the owner of the bar and one of the two victims, testified that when Mr. Krug walked into the horseshoe area in the middle of a game, he yelled to him: "Hey you gotta watch yourself around here. We're throwing horseshoes. Keep your head up." Mr. Krug made a vulgar gesture at him and then walked to a group of female patrons playing cornhole and attempted conversations with them. When Mr. Reihner asked him to leave them alone, Mr. Krug went to the bar area and argued with a patron there. Mr. Reihner identified himself as the bar owner and asked Mr. Krug to leave, to which Mr. Krug responded: "Let's take this outside."

{¶ 10} Mr. Reihner then walked Mr. Krug out of the bar through a side door. Once they were outside, Mr. Krug "swung at him," and they started to exchange punches. Mr. Layne tried to jump in to break up the fight but Mr. Reihner grabbed Mr. Layne and pushed him away because he did not want him involved. After a few more punches were exchanged, the fight suddenly stopped. Mr. Reihner noticed Mr. Layne lying on the ground. Mr. Layne told Mr. Reihner he was stabbed. Mr. Reihner was surprised because he did not see a knife during the fight. He looked down at Mr. Layne and then saw that his own side was bleeding. For the first time he realized he was stabbed as well.

{¶ 11} On the evening of the incident, Mr. Layne was watching television at the bar after finishing his shift in the kitchen. He heard a commotion and followed several people outside though the side door. Once outside, he saw Mr. Reihner and Mr. Krug arguing. At one point, he saw Mr. Krug reaching down to the left side of his leg and pulling out an eight-to-nine-inch-long knife. He took a couple of steps toward Mr. Reihner in an attempt to stop Mr. Krug, who then slung him against the wall and stabbed him. Mr. Layne looked down and saw his blood pouring out. He took a few more steps and collapsed, his intestines pouring out to the ground.

3

{¶ 12} Several patrons who were at the bar that evening also testified, although none witnessed the actual stabbings. Michael Elly was playing horseshoes when Mr. Krug walked through the area. Mr. Reihner asked him to be careful but Mr. Krug responded aggressively, saying to Mr. Reihner "I'll kick your ass." Mr. Reihner then asked him to leave and escorted him out. Mr. Elly went to the bathroom, and when he came out, his wife screamed frantically that "Jason [Reihner] was in trouble." He went outside and saw Mr. Krug held down by several people, and he managed to pry the knife out of Mr. Krug's hand.

{¶ 13} Jeff Haase, who also participated in the horseshoe game, testified he saw Mr. Krug walk through the horseshoe area. He and Mr. Reihner exchanged words and he heard Mr. Krug say "hey do you want to take this outside." Mr. Reihner responded: "I'm the owner, just get out." Mr. Haase followed Mr. Reihner and Mr. Krug outside and saw the two exchange punches. He estimated there were ten people gathering around watching the fight, but no one else was involved in the fight. Mr. Haase backed away from the fight, and heard somebody yell "he's got a knife, he stabbed him." He then saw Mr. Krug walk out of the crowd, with a knife in his left hand. Mr. Haase hip-checked him to the ground to prevent him from leaving and struggled with him to remove his knife. Mr. Haase injured his face when he head-butted Mr. Krug in an effort to get him to drop the knife.

{¶ 14} Mr. Reihner's brother, Herbert Reihner, tried to help Mr. Haase by getting on top of Mr. Krug as he was lying on the ground.

{¶ 15} Sonia Vickers, the bartender that night, saw Mr. Reihner escort Mr. Krug out of the side door and she followed them outside. She stood right in front of the two men, who were arguing, pushing, and fighting. At one point Mr. Krug got "the better" of Mr. Reihner and she wondered why no one jumped in to help. She testified no one else was involved in the fight and no one prevented Mr. Krug from leaving. She realized Mr. Layne was stabbed when she saw "his intestines hanging out."

{¶ 16} Several firefighters and police officers who were called to the scene of the incident testified regarding how they tended to the two victims and their investigation of the incident.

{¶ 17} **Witnesses for the Defense**

{¶ 18} Mr. Krug testified on his own behalf. He portrayed Mr. Reihner as the aggressor in the fight. He admitted stabbing both Mr. Reihner and Mr. Layne, but claimed he stabbed Mr. Reihner in self-defense and did not know how Mr. Layne got stabbed.

{¶ 19} He testified earlier that day he went fishing with a friend, who had given him a knife the day before. When he returned, he sharpened the knife and put it on a table. Some friends came over to visit and he showed them the knife. When a female friend appeared to be uncomfortable with the sight of the knife, he folded it up and put it away in a sheath and then put it in the overalls he was wearing. Later, he and his friends decided to go to the bars to drink. They went to one bar, and while there, the knife fell out of his overalls as he bent over to play pool. He picked up the knife and put it in his overalls' right pocket.

{¶ 20} After the first bar, Mr. Krug and his friends went to the Lake Effects bar. While he was watching an Ultimate Fighting Championship on the bar television, he had a verbal confrontation over the way he was dressed with Herbert Reihner, the bar owner's brother. Before he left, he went to the horseshoe area to say goodbye to a friend who was playing a game there. He inadvertently walked through the horseshoe pit and heard Mr. Reihner yell out. Mr. Krug testified he raised his hand to thank Mr. Reihner for the warning but Mr. Reihner looked visibly upset. As he kept walking, Mr. Reihner called him a "fucking idiot," and said "it's my bar, get the fuck out."

{¶ 21} Mr. Krug testified that he then turned around and left, but Mr. Reihner followed him outside, along with five other guys. He testified:

{¶ 22} "Jason [Reihner] was calling me a few choice names on the way out. At one point I did look over my shoulder, and I said dude, you don't want to fight me. You want to jump me is what you want to do. And I started walking towards the side door, and I got about halfway to the side door, and Jason come [sic] up behind me and pushed me. When Jason pushed me, I took a few steps and I caught my balance. And I turned around and looked at him, and his buddy, who I now know is Jay Davis, was holding Jason. He was holding Jason back. So I just turned around and left. I left the [sic], I walked straight out the door. I wasn't pushed out the door. I didn't put my hands up to stop."

{¶ 23} Mr. Krug testified that he walked through the door to the parking lot and toward a friend who was to give him a ride home. He took about four or five steps before he looked over his shoulder to make sure nobody followed him. About half way to his ride, Mr. Reihner came up behind him and pushed him. He testified Mr. Reihner "came at me like he was gonna try to tackle me to the ground. His face was right here on my thighs, and he had his arms around my legs and he was trying to push me backwards."

{¶ 24} Mr. Krug testified that people started to come out of the bar and some of them saw the altercation and headed toward them. He described a mob scene and gave a dramatically different account of what led to his stabbing of both Mr. Reihner and Mr. Layne.

5

{¶ 25} According to Mr. Krug, a crowd was converging around them. Mr. Reihner was trying to take him down and he was trying to push him off. The first person to swing at him was Mr. Layne. A female grabbed Mr. Layne and told him to let them fight it out. Ten people were pushing and grabbing him; one guy held him in a headlock. When he got out of the headlock, "the entire crowd" pushed him into a corner against the wall between a dumpster and an air conditioning unit. He testified that he tried to make his way through the crowd but someone pushed him back against the wall and he and Mr. Reihner were chest to chest. Mr. Reihner's left hand pinned him against the wall. With his back against the wall, he tried to swing at Mr. Reihner with his right arm, but somebody tried to control that arm. At that point, the following occurred:

{¶ 26} "Somebody pinned my arm up against my leg. When my arm was pinned against my leg, I realized that [I] still had my knife. I pulled the knife out and I stabbed Jason in the side."

{¶ 27} He testified he stabbed Mr. Reihner because he was "afraid" and "terrified." When asked to elaborate, he stated:

{¶ 28} "I have no idea. * * * Once I stabbed Jason and he started to back up, he turned around and told somebody, I've been stabbed, leave him alone. Let the guy go. I've been stabbed. He's got a knife. Jason started to back up, and I started to get away from the wall. Once I * * * started to come off of the wall, I remember somebody was trying to control the knife. Some, that's how I, that's how—I personally believe that's how Ray [Layne] got stabbed. I believe he was trying to control my hand and the knife in it. It was pinned against the wall. I remember jerking my hand, but I don't recall who was there, who was holding it. Now I believe it was Ray. I believe that." When asked: "Did you try to stab Ray?" Mr. Krug answered: "No I did not."

{¶ 29} Lindsey Cotton, a part-time employee of the Ashtabula County Courthouse, was called as a defense witness, but her testimony did not support Mr. Krug's claim of self-defense. She was at the horseshoe area when Mr. Krug walked through the horseshoe area. He turned around and asked: "Did someone just call me a fucking idiot?" Mr. Reihner told him that he should have watched before he walked through. Mr. Krug then asked Mr. Reihner to "take it outside." Mr. Reihner refused, saying "you can just go. It's 2 o'clock. It's time to go." Mr. Reihner then escorted Mr. Krug outside. People were standing around and watching the two men fight. Some tried to separate the two, who were shoving each other. No one else was involved in the fight and no one other than Mr. Reihner hit Mr. Krug, who would have no reason to fear serious physical harm and was free to walk away at any time. As Ms. Cotton described, the fight between the two was "basically pushing and shoving, and maybe fisticuffs." She did not see Mr. Krug stab Mr.

6

Layne or Mr. Reihner and only realized Mr. Layne was stabbed when Ms. Vickers screamed that he was stabbed. Ms. Cotton helped hold Mr. Krug down on the ground while others tried to pry the knife from his hand.

{¶ 30} Jay Davis was also called as a defense witness, but his testimony did not support Mr. Krug's claim of self-defense either. He was playing horseshoes when Mr. Krug walked into the horseshoe area. Everyone said "look out" and Mr. Krug asked: "Did someone just call me an idiot?" Mr. Reihner said "yes, I did. You almost got hit with a horseshoe." Mr. Krug turned around and became aggressive and belligerent, saying "You want to take this outside. Let's go. Let's go." Mr. Reiner said: "that's it, you're out of here." Mr. Krug said: "who the F are you," to which Mr. Reiner responded: "I'm the owner, and you're out of here."

{¶ 31} Mr. Davis followed Mr. Reihner and Mr. Krug to the side door. As they reached the side door, he saw Mr. Krug stop before reaching the door and put his arms up, as if saying "I'm not leaving." Mr. Reihner then pushed him toward the door by grabbing Mr. Krug underneath his arms. They both took a couple of steps toward the door. Mr. Reihner then let go and they both walked outside. Once they were outside, Mr. Krug "immediately turned around and started coming at Jason. And again, aggressively and belligerently, saying come on, you want some of this. Let's go. Let's go."

{¶ 32} Mr. Krug came at Mr. Reihner and was motioning as if he was going to hit Mr. Reihner, who then put his arms underneath Mr. Krug's armpits and tried to wrestle him to the ground. The two men exchanged blows. Mr. Davis saw Mr. Reihner had Mr. Krug "bent over the dumpster and was hitting him." When Mr. Reihner backed off briefly, Mr. Davis grabbed him on the shoulder and said "that's enough." Around the same time Mr. Layne stepped into the fight. Mr. Reihner went back to the fight for just a second before he turned to Mr. Davis and said "I'm stabbed." Mr. Davis believed Mr. Krug was never in danger of being seriously harmed—he testified he had "witnessed fisticuffs before and [this] was a fairly minor fisticuff."

*State v. Krug*, No. 2008-L-085, 2009 WL 2370931, at *1-5 (Ohio Ct. App. July 31, 2009).

**Procedural History**

Mr. Krug previously petitioned this Court for habeas relief in 2013. *Krug v. Kelly*, No. 1:11-CV-0074, 2013 WL 2351848 (N.D. Ohio May 24, 2013). In that case, then-Magistrate Judge Kathleen Burke set forth the procedural history of this matter:

A.      **State Conviction**

On February 18, 2008, the Lake County Grand Jury indicted Krug on five counts. Count one charged Krug with felonious assault involving a deadly weapon in violation of Ohio Rev. Code § 2903.11(A)(2). Count two charged Krug with felonious assault involving serious physical harm in violation of Ohio Rev. Code § 2903.11(A)(1). The victim of the offenses charged in counts one and two was Harold Layne. Count three charged Krug with felonious assault involving a deadly weapon in violation of Ohio Rev. Code § 2903.11(A)(2). Count four charged Krug with felonious assault involving serious physical harm in violation of Ohio Rev. Code § 2903.11(A)(1). The victim of the offenses charged in counts three and four was Jason A. Reihner, the bar owner. Counts one through four were all second degree felonies and each of the four counts included an RVO specification under Ohio Rev. Code § 2941.149. Count five charged Krug with carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A)(1), a fourth degree felony. Krug pled not guilty to the indictment.

The State notified Krug of intent to use a certified copy of the entry of judgment of the prior conviction(s) as alleged in the specifications, as proof of the conviction(s). Krug thereafter notified the State of his intent to object to the use of the entry of judgment of prior convictions. Krug also filed a Motion in Limine to exclude any mention of his prior criminal record in the case in chief or for impeachment. In his Motion in Limine, Krug offered to stipulate to the prior offense of carrying a concealed weapon but requested that said prior offense be kept from the jury to avoid prejudice. As to victim Jason Reihner, Krug filed proposed jury instructions regarding the lesser included offense of aggravated assault. As to victim Harold Layne, Krug filed proposed jury instructions regarding the lesser included offense of assault.

On April 28, 2008, a jury found Krug guilty of all five counts in the indictment. On April 29, 2008, the trial court conducted an RVO hearing pursuant to Ohio Rev. Code § 2941.149. In its May 6, 2008, judgment entry, the trial court concluded that the State and Krug had stipulated to Krug's prior convictions as alleged in the RVO specifications in counts one through four and determined that, pursuant to Ohio Rev. Code §§ 2941.149, 2929.14(D)(2)(a) and 2929.14(D)(2)(b), Krug was a Repeat Violent Offender as defined in Ohio Rev. Code §§ 2941.149 and 2929.01. Krug was sentenced to eight years on each of the four felonious assault counts but the trial court merged count one into count two and count three into count four. Krug was sentenced to eighteen months on count five. Counts two and four ran consecutive to each other and to count five, for a total of seventeen years and six months. The trial court also sentenced Krug to consecutive ten year sentences for each of the RVO specifications in counts two and four. The total sentence for all counts including the RVO specifications was for thirty-seven years and six months.

**B.**     **Direct Appeal**

On May 28, 2008, Krug, through counsel, filed an appeal to the Eleventh District Court of Appeals. Krug asserted the following assignments of error:

> **FIRST ASSIGNMENT OF ERROR**: The Trial Court erred when it restricted the defense from presenting evidence regarding the victim's habit of and reputation for ejecting bar patrons in a violent manner in violation of the defendant-appellant's rights to due process and fair trial to present and confront witnesses as guaranteed under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution.

> **SECOND ASSIGNMENT OF ERROR**: The Trial Court erred when it refused to submit the defendant-appellant's proposed jury instructions on aggravated assault and assault in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

> **THIRD ASSIGNMENT OF ERROR**: The Trial Court erred when it refused to submit defendant-appellant's proposed jury instruction on accident in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

> **FOURTH ASSIGNMENT OF ERROR**: The Trial Court erred to the prejudice of defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

> **FIFTH ASSIGNMENT OF ERROR**: The Trial Court erred by imposing consecutive prison terms under the repeat violent offender specifications in violation of the defendant-appellant's rights to due process and trial by jury and against double jeopardy as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Section 10, Article I of the Ohio Constitution.

On February 17, 2009, the State filed a responsive brief. Krug's Motion to supplement his brief with new case law, *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) was granted. On August 3, 2009, the Eleventh District Court of Appeals affirmed the judgment of the Lake County Court of Common Pleas.

On September 14, 2009, Krug, *pro se*, filed a Notice of Appeal with the Ohio Supreme Court and a Memorandum in Support of Jurisdiction. Krug raised the following propositions of law:

> **PROPOSITION OF LAW NO. I**: The trial court erred when it refused to submit the defendant-appellant's proposed jury instructions of inferior degree in violation of defendant-appellant's rights to due process and fair trial by jury as Guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution.

> **PROPOSITION OF LAW NO. II**: The trial court erred to the prejudice of defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

> **PROPOSITION OF LAW NO. III**: The trial court erred by imposing consecutive prison terms under the repeat violent offender specifications in violation of defendant-appellant's rights to due process and trial by the jury and against double jeopardy as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.

The State filed a memorandum in response. On December 30, 2009, the Ohio Supreme Court denied leave to appeal and dismissed Krug's appeal as not involving any substantial constitutional question. On January 11, 2010, Krug filed a Motion for Reconsideration with the Ohio Supreme Court arguing that he was not subject to an RVO specification under *State v. Hunter*, 123 Ohio St.3d 164, 915 N.E.2d 292 (2009), and sought to supplement the record with copies of his prior record. The State opposed the Motion for Reconsideration as well as Krug's request to supplement the record. On March 3, 2010, the Ohio Supreme Court denied Krug's motion for reconsideration and his motion for transmittal of supplementation of the record on appeal.

## C.    Petition to Vacate or Set Aside Judgment of Conviction or Sentence

On January 27, 2009, Krug, *pro se*, filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence. Krug asserted two grounds for relief: (1) he was denied the right to a fair and impartial jury because of "unlawful pretrial publicity," and (2) defense counsel "failed to obtain statements or fully investigate witnesses." The state filed a memorandum in response. On February 23, 2009, the Lake County court dismissed Krug's Petition for Post Conviction Relief, and also denied Krug's request for appointment of counsel and expert assistance. The Lake County court's denial was based on a merits review as well as on a determination

that the issues raised could have been raised on direct appeal and therefore were barred by *res judicata*.

In March, 2009, Krug, *pro se*, appealed the trial court's decision to the Eleventh District Court of Appeals. Krug sought leave to add additional claims and requested expert assistance, i.e., an investigator to investigate toxicology reports and witnesses statements. He asserted the following as his assignments of error:

**FIRST ARGUMENT**: Ineffective assistance of trial counsel when he failed to ensure a fair and impartial jury trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**Issue Presented**: Trial counsel was ineffective when he failed to address the Detective's slanderous article.

**SECOND ARGUMENT**: Ineffective assistance of trial counsel when he failed to conduct a reasonable investigation to make informed decisions about who's testimony to proffer at trial in violation of the defendant-petitioners rights to due process, a fair trial, and to present witnesses as guaranteed under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**First Issue Presented**: Trial counsel was ineffective when he failed to interview critical alibi eyewitnesses prior to trial and in a rash decision decided against having them testify.

**Second Issue Presented**: Trial counsel was ineffective when he failed to investigate strength of witnesses because weaker witness was called to testify instead of witness with "powerful support" for defense.

**THIRD ARGUMENT**: Ineffective assistance of trial counsel when he failed to obtain evidence to proffer at trial in violation of the defendant-petitioners rights to due process and a fair trial as guaranteed under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**Issue Presented**: Trial counsel was ineffective when he failed to obtain the bar owners "Jason Reihner" toxicology results.

**FOURTH ARGUMENT**: Ineffective assistance of trial counsel when he failed to consult an expert to determine depth and angle of controversial injuries in violation of the defendant-petitioners rights to due process, a fair

11

trial, and present witnesses as guaranteed under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**First Issue Presented**: Trial counsel was ineffective when he failed to consult a forensic doctor to firmly establish depth of controversial injuries.

**Second Issue Presented**: Trial counsel was ineffective when he failed to consult a forensic doctor to firmly establish angle of controversial injuries.

On June 3, 2009, the appellate court denied Krug's motion to add additional claims and for the appointment of an investigator. In its denial, the appellate court indicated that its role was "limited to reviewing the proceedings before the trial court" and therefore the appellate court did not have the authority to grant the request to amend the petition for postconviction relief or provide funds for the hiring of an investigator. On June 29, 2009, the State filed its brief in response to Krug's appeal.

On July 29, 2009, Krug filed a Motion for Leave to Remand Petitioners Pro–Se Petition Back to Trial Court. Krug asserted that his reason for failing to initially include certain claims was because the public defender declined to handle his case and failed to timely return documents. On October 1, 2009, the Eleventh District Court of Appeals overruled Krug's motion for leave to remand. In so doing, the Eleventh District Court of Appeals stated that "[i]t is inappropriate for this court to remand an appeal merely to allow the appellant to raise additional issues for appeal." On November 27, 2009, the Eleventh District Court of Appeals affirmed the trial court's denial of Krug's postconviction petition.

Krug did not appeal the November 27, 2009 Ohio Court of Appeals' decision affirming the trial court's denial of postconviction relief. However, on November 12, 2009, Krug, pro se, appealed to the Supreme Court of Ohio the October 1, 2009 decision denying him leave to remand. He raised the following proposition of law in his memorandum in support of jurisdiction:

Appellate counsel hindered petitioner's opportunity to fairly present his claim by reneging on representation with an erroneous evaluation, while retaining evidentiary material in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

The State filed a memorandum in response. On February 10, 2010, the Supreme Court of Ohio denied Krug leave to appeal.

On December 11, 2009, Krug, *pro se*, filed a Civ. R. 60(B) Relief from Judgment Order of pro se Postconviction Petition in the trial court, requesting that he be relieved from the court's February 23, 2009 judgment denying postconviction relief and be allowed to amend his petition to include additional claims. Krug raised the following "proposition of law:"

> **PROPOSITION OF LAW**: Appellate counsel hindered petitioners opportunity to fairly present his claims by reneging on representation with an erroneous evaluation, while retaining evidentiary material in violation of the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

On December 17, 2009, the State filed its brief in opposition to Krug's 60(B) motion. After determining that Krug's 60(B) motion was actually "a motion to vacate the court's journal entry of February 23, 2009 and a Crim R. 35 request for leave to amend his January 27, 2009 petition," the trial court, on January 7, 2010, denied the motion. The trial court disagreed with Krug's claim that the public defender "reneged" on representing him, explaining that the public defender's decision to decline representation was within her discretion under state law. Moreover, the court found petitioner's additional claims barred by the doctrine of *res judicata* because the issues could have been raised at trial or on direct appeal. Krug did not appeal the trial court's January 7, 2010, ruling.

### D.     Application to Reopen Appeal

On October 22, 2009, Krug, pro se, filed an Application for Reopening his appeal pursuant to Ohio App. R. 26(B). Krug raised the following assignments of error:

> **FIRST ASSIGNMENT OF ERROR**: Appellant Counsel was ineffective for presenting "previously considered" direct appeal on an incorrect and incomplete record in violation of the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> **First Issue Presented**: Appellant counsel failed to correct detrimental errors in the record.
>
> **Second Issue Presented**: Appellant counsel presented deficient argument by neglecting testimony from the triers of fact that strongly supports the previously considered inferior instructions.
>
> **SECOND ASSIGNMENT OF ERROR**: Appellant Counsel Was Ineffective For Failing To Raise Ineffective Assistance Of Trial Counsel In

13

Violation Of The Fifth, Sixth, And Fourteenth Amendment Of The Trial United States Constitution And Section 10, Article I Of The Ohio Constitution.

**First Issue Presented**: Trial Counsel failed to motion for a mistrial when the Trial Court threatened the jury pool with jail and deviated from established Ohio and Federal Procedure rendering voir dire partial.

**Second Issue Presented**: Trial Counsel failed to obtain bar owner Jason Reihner's toxicology results and neglected to confront Det. Doyle with relevant document.

**Third Issue Presented**: Trial Counsel failed to contact two alibi witnesses prior to trial and neglected to obtain a statement or proffer their critical testimony at trial.

**Fourth Issue Presented**: Trial Counsel failed to investigate the strength of witnesses because weaker witness was called to testify instead of witness with "powerful support" for defense.

**Fifth Issue Presented**: Trial Counsel failed to oppose the Trial Courts prejudicial announcement that Krug was in custody and wearing a leg restraint under his civilian clothing.

**Sixth Issue Presented**: Trial Counsel repeatedly failed to motion for a mistrial when the Trial Court neglected to explore the amount of prejudice the juror distractions caused.

On November 20, 2009, the State filed its Response in Opposition to Appellant's Pro Se Application for Reopening. On December 16, 2009, Krug filed a Reply Brief. In December 2009, the Eleventh District Court of Appeals denied Krug's request to reopen his appeal.

On January 22, 2010, Krug filed a Motion for Leave to Amend Appellant's Pro Se Application for Reopening based on the decision in *State v. Hunter*, 123 Ohio St.3d 164, 915 N.E.2d 292 (2009). Krug argued that, in light of *Hunter*, "his judicial record does not substantiate designating [him] a Repeat Violent Offender." The State filed a response in opposition to Krug's Motion for Leave to Amend. On March 22, 2010, the Eleventh District Court of Appeals overruled Krug's Motion for Leave to Amend. On April 14, 2010, Krug, *pro se*, appealed the denial of his Motion for Leave to Amend. Krug raised the following proposition of law in his memorandum in support of jurisdiction:

14

**PROPOSITION OF LAW**: Ineffective assistance of counsel for neglecting to distinguish prior judicial record from wrongly being designated a repeat violent offender in violation of the Fifth, Sixth, Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

Also, on April 14, 2010, Krug filed, in the Supreme Court of Ohio, a Motion for Transmittal of Supplementation of the Record on Appeal in which he argued that the indictment and sentencing entries from Lake County Court of Common Pleas, Case No. 94–CR000921 and 93–CR–000413 were necessary. On May 7, 2010, the State filed a Memorandum in Response. On June 23, 2010, the Supreme Court of Ohio denied Krug leave to appeal and denied Krug's motion for transmittal of supplemental record as moot. On July 2, 2010, Krug moved for reconsideration. On July 9, 2010, the State filed a Response to the Motion for Reconsideration. On August 25, 2010, the Supreme Court of Ohio denied Krug's Motion for Reconsideration.

On March 8, 2010, Krug filed a motion captioned "60(B) Relief from Judgment Entry Date." In the motion, Krug argued that he had not received notice of the Eleventh District Court of Appeals' December 2009 entry denying his Application to reopen his appeal pursuant to Ohio App. R. 26(B) until February 4, 2010. On April 23, 2010, the Eleventh District Court of Appeals granted Krug's motion and instructed the clerk of courts to refile the judgment entry denying Krug's application to reopen in order to allow Krug the opportunity to submit a timely appeal to the Supreme Court of Ohio.

On May 14, 2010, Krug, *pro se*, appealed the decision to deny his application for reopening to the Supreme Court of Ohio. Krug raised the following propositions of law in his memorandum in support of jurisdiction:

**PROPOSITION OF LAW NO. I**: Appellant Counsel was ineffective for presenting "previously considered" direct appeal on an incorrect and incomplete record in violation of the Fifth, Sixth, Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**First Issue Presented**: Appellant counsel failed to correct detrimental forensic errors in the record.

**Second Issue Presented**: Appellant counsel presented a deficient argument by neglecting testimony from the triers of fact that strongly supports the previously considered inferior instructions.

**PROPOSITION OF LAW NO. II**: Appellant Counsel Was Ineffective For Failing To Raise Ineffective Assistance Of Trial Counsel In Violation Of The Fifth, Sixth, And Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**First Issue Presented**: Trial Counsel failed to motion for a mistrial when the Trial Court threatened the jury pool with jail and deviated from established Ohio and Federal Procedure rendering voir dire partial.

**Second Issue Presented**: Trial Counsel failed to obtain bar owner "victim's" toxicology results and neglected to confront Det. Doyle with relevant document.

**Third Issue Presented**: Trial Counsel failed to contact two alibi eyewitnesses prior to trial and neglected to obtain a statement or proffer their critical testimony at trial.

**Fourth Issue Presented**: Trial Counsel failed to investigate the strength of witnesses because weaker witness was called to testify instead of witness with "powerful support" for defense.

**Fifth Issue Presented**: Trial Counsel failed to oppose the Trial Courts prejudicial announcement that Krug was in custody and wearing a leg restraint under his civilian clothing.

**Sixth Issue Presented**: Trial Counsel repeatedly failed to motion for a mistrial when the Trial Court neglected to explore the amount of prejudice the juror distractions caused.

On June 8, 2010, the State filed a Memorandum in Response. On July 21, 2010, the Supreme Court of Ohio dismissed Krug's appeal as not involving any substantial constitutional question.

### E.    Motion for Resentencing

On December 16, 2010, Krug filed a Motion for Resentencing with Allocution with the trial court asserting that he was wrongly designated an RVO and that the sentencing entry was inaccurate with respect to post-release control. On January 11, 2011, the State responded. The State conceded that the judgment entry did not accurately describe the post-release control period, but argued that the RVO designation was proper. On January 13, 2011, the State moved for resentencing for the purpose of correcting the original sentencing judgment entry regarding post-release control. On January 31, 2011, Krug filed a Response to State's Reply and Motion for Resentencing. On February 1, 2011, the State filed a

Response to Defendant's Response to State's Reply and Motion for Resentencing. Petitioner states in his Traverse that, on May 3, 2011, the Lake County trial court denied his request.

*Id.* at *17-25 (citations and footnotes omitted) (cleaned up). In his previous habeas application, Mr.

Krug, acting pro se, submitted the following ten grounds:

**GROUND ONE**: Counsel was ineffective for failing to distinguish defendant's prior record from wrongly being designated a repeat violent offender in violation of the fifth, Sixth and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**GROUND TWO**: Appellant counsel was ineffective for presenting "previously considered" direct appeal on an incorrect and incomplete record in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**GROUND THREE**: Appellant counsel presented a deficient argument by neglecting testimony from the triers of fact that strongly supports the previously considered inferior instructions in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**GROUND FOUR**: Appellant counsel was ineffective for failing to raise ineffective assistance of Trial Counsel that failed to motion for a mistrial when the Trial Court rendering voir dire partial In Violation Of The Fifth, Sixth And Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND FIVE**: Appellant counsel was ineffective for failing to raise ineffective assistance of Trial Counsel that failed to obtain the toxicology results In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND SIX**: Appellant Counsel was ineffective for failing to raise Ineffective Assistance of Trial Counsel, that failed to contact two alibi eyewitnesses prior to trial and neglected to obtain a statement or proffer their critical testimony at trial in Violation Of The Fifth, Sixth and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND SEVEN**: Appellant Counsel was ineffective for failing to raise ineffective assistance of Trial Counsel, that failed to investigate the strength of witnesses because weaker witness was called to testify instead of witness with

17

"powerful support" for defense In Violation Of The Fifth, Sixth, And Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND EIGHT**: Appellant Counsel was ineffective for failing to raise ineffective assistance of Trial Counsel, that neglected to oppose the Trial Court's premeditated intentions to notify the jury that Appellant was in custody and wearing a leg restraint In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND NINE**: Appellant counsel was ineffective for failing to raise ineffective assistance of Trial Counsel, that neglected to explore the amount of prejudice the juror distractions caused In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND TEN**: Trial counsel was ineffective for failed to ensure a fair and impartial jury trial due to slanderous pretrial publicity In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

*Id.* at *2-3.

Magistrate Judge Burke concluded in her Report and Recommendation that Ground Ten was procedurally defaulted, and, after separately reviewing each of the other grounds on the merits, rejected them. *Id.* at *42. District Judge Sara Lioi adopted the Report and Recommendation and dismissed the case without issuing a certificate of appealability. *Id.* at *12. Mr. Krug subsequently filed an application for a certificate of appealability, which the Sixth Circuit denied. (ECF #5-1, PageID 211).

**Motions for New Trial and Release of Grand Jury Testimony**

On August 31, 2017, Mr. Krug, through counsel, moved in the trial court for leave to file a delayed motion for a new trial. (*Id.* at PageID 212-19). Mr. Krug argued because the State had falsely implied witness Michael Nichols provided unfavorable testimony to the grand jury, his

counsel did not call Mr. Nichols; however, based on Mr. Nichols's affidavit, he denied even testifying before the grand jury. (*Id.* at PageID 218). Mr. Krug believed that Mr. Nichols's testimony as well as the testimony of other witnesses would have been favorable to him. (*Id.*). In his supporting memorandum, Mr. Krug maintained he was unavoidably prevented from timely discovering the new evidence because his attorney wrongly believed the State's assertion that Mr. Nichols testified before the grand jury and was not a favorable witness. (*Id.* at PageID 253-62). The State opposed the motion as untimely, arguing Mr. Nichols and Mr. Anderson were both known and accessible to the defense at the time of trial, but as a strategic decision, defense counsel chose not to call them. The State strongly denied any wrongdoing by the prosecutor. (*Id.* at PageID 263-68). With the trial court's permission, the State secured Mr. Nichols's grand jury testimony contained in an audio recording of February 8, 2008. (*Id.* at PageID 269-72; 273-74). After Mr. Krug filed a reply brief (*Id.* at PageID 275-81), the parties submitted additional briefs with the court's permission. (*Id.* at PageID 282-85; 321; 322-23; 324; 325-30).

On December 14, 2017, the court denied Mr. Krug's motion for leave to file a delayed motion for a new trial, finding Mr. Krug had failed to demonstrate he was unavoidably prevented from obtaining the testimony of Mr. Nichols or Mr. Anderson in time to file a timely motion for a new trial. (*Id.* at PageID 334). The trial court pointed out that Mr. Krug knew Mr. Nichols from the bar, had contact information for Mr. Nichols, Mr. Krug's investigator had spoken to Mr. Nichols in February 2008, and Mr. Nichols came to the courthouse during Krug's trial. (*Id.* at PageID 335-36). Finding Mr. Nichols's affidavit "inconclusive" and Mr. Anderson's affidavit "highly impeachable," and noting that both had felony convictions, the court determined counsel's decision not to call them to testify was based on "sound legal strategy." (*Id.* at PageID

19

336-37). The court conducted an *in camera* review of Mr. Nichols's grand jury testimony and found, contrary to his affidavit, Mr. Nichols did testify before the grand jury and his testimony was not exculpatory. (*Id.* at PageID 337). Finding the State did not mislead Mr. Krug as to the nature of Mr. Nichols's testimony, the trial court rejected the insinuation of prosecutorial misconduct, calling it "reckless" and based on "perjured testimony." (*Id.*). The court also noted it would need to resentence Mr. Krug with respect to post-release control. (*Id.* at PageID 338). On December 26, 2017, Mr. Krug, through counsel, moved for the disclosure of Mr. Nichols's grand jury testimony. (*Id.* at PageID 339). The State opposed the motion (*Id.* at PageID 344) and Mr. Krug replied. (*Id.* at PageID 346-48). Finding Mr. Krug failed to demonstrate a "particularized need" for Mr. Nichols's grand jury testimony, on January 8, 2018, the court denied Mr. Krug's motion. (*Id.* at PageID 349-50).

In a consolidated appeal from the trial court's rulings on Mr. Krug's motion for leave to file a motion for a new trial and motion for release of grand jury transcripts, Mr. Krug raised the following assignments of error:

1. The trial court abused its discretion when it denied defense counsel an opportunity to review partial transcripts to the grand jury proceedings and refused to seal them in the record for appellate review in violation of the Sixth and Fourteenth Amendments.

2. The trial court erred when it denied defendant's motion for leave to file a delayed motion for a new trial because it ignored the burden shifting in self-defense and neglected its role in the suppression of the newly discovered evidence rendering its decision unreasonable, arbitrary, and unconscionable in violation of the Fifth, Sixth and Fourteenth Amendments.

(*Id.* at PageID 369-87). The State submitted a responsive brief (*Id.* at PageID 389-405) and Mr. Krug replied. (*Id.* at 406-10). On August 13, 2018, the Eleventh District affirmed the trial court's

judgments. (ECF #5-1 at PageID 411-19; *see also State v. Krug*, Nos. 2018-L-007, 2018-L-024, 2018

WL 3832844 (Ohio Ct. App. Aug. 13, 2018)).

With the assistance of current habeas counsel, Mr. Krug appealed to the Ohio Supreme

Court, asserting the following propositions of law:

I.    When a ruling is based solely on the conflicting representation of the contents of secret grand jury proceedings, the interest of justice necessitates that the limited portion of the grand jury should be made available for review by the defense and/or sealed for the appellate record.

II.   If an officer of the court intentionally misrepresents on the record material information related to secret proceedings which cannot be known to defense, counsel for defendant is not ineffective for relying on those representations.

III.  The court abused its discretion in denying appellants motion for new trial where defendant presents credible evidence as soon as it is discovered without undue delay.

(ECF #5-1 at PageID 423). The State opposed jurisdiction. (*Id.* at PageID 444-57). On December

12, 2018, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 459; *see also State v.*

*Krug*, No. 2018-1372, 113 N.E.3d 553 (Ohio Dec. 12, 2018) (table)).

**Resentencing**

On April 5, 2018, the trial court held a hearing to correct the original sentencing entry

regarding post-release control sanctions. The original sentencing entry of May 6, 2008 indicated

"post release control is mandatory in this case up to a maximum of 3 years." (*See* N.D. Ohio Case

No. 1:11-cv-00074, ECF #9-5, PageID 214). The new, corrected sentencing entry read: "The Court

has notified the Defendant, that post release control is mandatory in this case for a period of three

(3) years." (ECF #5-1 at PageID 460). Mr. Krug, through counsel, appealed to the Eleventh

District, raising the following assignments of error:

1.  Ohio's burden shifting Self-Defense Law violates the Defendant's Second, Fifth, and Fourteenth Amendment Rights under the United States Constitution.

2.  Trial Counsel was ineffective for failing to raise the issue of spoliation and to request a jury instruction based on the state's failure to preserve the blood pooled at the crime scene so that defense may have access to independent testing.

3.  Trial Counsel was ineffective for failing to object to jury instructions erroneously stating that the defendant had a duty to retreat.

4.  The trial court violated appellant's constitutional rights by arbitrarily denying him the testimony of a favorable witness for the purpose of presenting expert testimony to interpret toxicology results.

5.  The trial court erred in sentencing defendant appellant to maximum consecutive sentences as his findings are not supported by the record.

6.  The trial court erred in denying Appellant of an "inferior degree" instruction of aggravated assault.

(*Id.* at PageID 469-87).

The State submitted a responsive brief (*Id.* at PageID 489-518) and Mr. Krug replied (*Id.* at PageID 521-36). The State also notified the court of supplemental authority relevant to the appeal. (*Id.* at PageID 538). On March 18, 2019, the Eleventh District affirmed the trial court's judgment. (ECF #5-1 at PageID 544-51; *see also State v. Krug*, No. 2018-L-056, 2019 WL 1241940 (Ohio Ct. App. Mar. 18, 2019)). Represented by counsel, Mr. Krug appealed to the Supreme Court of Ohio, asserting the following propositions of law:

I.  This Court's holding in *Fisher* is inconsistent with federal law and violates due process.

II.  When a defendant is shouldered with the burden to show he acted in self-defense by a preponderance of the evidence and his conviction does not rest on the standard of guilt beyond a reasonable doubt has been denied his second amendment and due process rights.

22

III.    Trial counsel's failure to request a curative jury instruction based on the spoliation of evidence resulting from failure to collect and preserve blood pooled at the crime scene constitutes a denial of effective assistance of counsel.

IV.    Trial counsel is ineffective for failing to object to jury instructions erroneously stating that the defendant had a duty to retreat.

V.    When the alleged victim's mental state and credibility are at issue, the court cannot arbitrarily deny a defendant's right present favorable expert toxicology evidence based on arbitrary procedural rules.

VI.    The trial court errs in sentencing Appellant to maximum consecutive sentences where the record does not support such a finding.

VII.    The trial court errs when it denied Appellant of an "inferior degree" instruction of aggravated assault.

(ECF #5-1 at PageID 554-68). The State opposed jurisdiction. (*Id.* at PageID 570-85). On July 10, 2019, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 587; *see also State v. Krug*, No. 2019-0596, 125 N.E.3d 941 (Ohio July 10, 2019) (table)).

### FEDERAL HABEAS CORPUS

Mr. Krug, through counsel, filed this petition on October 8, 2020, asserting ten grounds for relief:

**Ground One**. The Ohio Supreme Court's holding in *State v. Fischer* is inconsistent with federal law and violates due process.

**Ground Two.** Second Amendment and due process rights are denied when the defendant is shouldered with the burden to show how he acted in self-defense by a preponderance of the evidence.

**Ground Three.** Trial Counsel's failure to request a curative instruction based on the spoliation of evidence resulting from failure to collect and preserve blood pooled at scene is ineffective assistance of counsel.

**Ground Four.** Ineffective assistance of counsel for failing to object to jury instructions erroneously stating there was a duty to retreat.

23

**Ground Five.** The trial court violated Petitioner's constitutional rights by arbitrarily denying him the testimony of a favorable witness for the purpose of presenting expert testimony to interpret toxicology results.

**Ground Six.** The trial court erred in sentencing Petitioner to maximum consecutive sentences as those findings are not supported by the record, violating Petitioner's federal due process.

**Ground Seven.** Ineffective assistance of counsel for failing to obtain limited portions of grand jury proceedings.

**Ground Eight.** If an officer of the court intentionally misrepresents on the record material information related to secret proceedings which cannot be known to defense, counsel for defendant is not ineffective for relying on those representations. However, counsel is ineffective for failing to investigate.

**Ground Nine.** Petitioner Krug was sentenced to two consecutive ten-year terms, one decade for each of the two repeat violent offender specifications. Petitioner Krug raised to the reviewing state court that the Repeat Violent Offender Specification cannot attach additional sentences because the trial court failed to issue judicial fact finding as set forth in 2929.14(D)(2)(a), which it did not. No such findings are set forth in the record.

**Ground Ten.** The combination of errors by the trial court, the prosecution and the ineffectiveness of the defense counsel deprived Petitioner Krug of a fair trial. The errors, if not individually, combined to cause the trial to be constitutionally infirm. Ohio recognizes this concept. State v. DeMarco (1987), 31 Ohio St.3d 191. These errors, as addressed in the preceding Claims for Relief in this petition, combined to violate Krug's due process right to a fair trial and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(ECF #1, PageID 6-11; ECF #1-2, PageID 26-48) (cleaned up).[2]

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Krug's

petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes

---

[2]     The State correctly notes that the claim labeled Ground One in the Petition does not appear in Mr. Krug's brief (which begins with the claim labeled Ground Two in the Petition as its "Ground One") and two grounds are labeled "Ground Eight." In this decision, , I begin with "Ground One" as it appears in the Petition and address them sequentially, with "Ground Two" being the second ground in the Petition and the first ground in the supporting memorandum.

that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or

mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also

require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### Procedural Barriers to Federal Habeas Review

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal

claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams*, 460 F.3d at 806; *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to

the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

In Ohio, claims must be raised on direct appeal, if possible, or res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Therefore, a petitioner is not entitled to raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). Consequently, if an Ohio petitioner fails to raise a claim on direct appeal that could have been raised at that time, the claim is procedurally defaulted. *Id.*

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Furthermore, neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle v. Isaac*, 456 U.S. 107, 130, n.35 (1982).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence, however, does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman*, 501 U.S. at 752-755; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state

32

procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

DISCUSSION AND ANALYSIS

**Successive Petitions**

As a threshold matter, because this is Mr. Krug's second habeas petition, he implicates the rule against successive petitions:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been

> determined by a judge or court of the United States on a prior application for a
> writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a). If a petitioner is resentenced, however, he may bring a new petition attacking

both the new sentence and the underlying conviction. *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir.

2016) (citing *King v. Morgan*, 807 F.3d 154, 157-58 (6th Cir. 2015)); *In re Stansell*, 828 F.3d 412

(6th Cir. 2016). This is because "final judgment in a criminal case means sentence. The sentence is

the judgment." *Stansell*, 828 F.3d at 416. "The sentence that matters in a habeas case . . . is the one

'pursuant to' which an individual is held 'in custody.'" *Id.* "[A] habeas petitioner, after a full

resentencing and the new judgment that goes with it, may challenge his undisturbed conviction

without triggering the 'second or successive requirements.'" *King*, 807 F.3d at 156. For a

resentencing to restart the statute of limitations clock, the new sentence must be "worse" than the

old. *Martin v. Phillips*, No 17-5499, 2018 WL 5623651, at *2 (6th Cir. July 13, 2018); *see also*

*Crangle*, 838 F.3d at 679-80.

Mr. Krug became subject to a worse-than-before sentence because at resentencing, the trial

court changed his post release control from a maximum 3-year period to a mandatory, definite 3-

year term. (ECF #5-1 at PageID 460). Therefore, under *Stansell*, this Petition is not a successive

petition subject to the bar established in § 2244. On this point, the parties agree. (*See* ECF #5 at

PageID 91) ("Krug argues that this petition is not successive . . . and the warden agrees).

The entry of a new judgment normally resets the statute-of-limitations clock. *King,* 807 F.3d

at 159. The clock thus "restarted" on July 10, 2019, the day the Supreme Court of Ohio declined

jurisdiction on Mr. Krug's appeal of the Eleventh District's affirming his new sentence. (ECF #5-1

at PageID 587). Mr. Krug then had 90 days to file a petition for writ of certiorari to the United

States Supreme Court. Rule 13, Supreme Court Rules of Practice; *see Jimenez v. Quarterman*, 555

U.S. 113, 119 (2009) (where a petitioner does not seek a writ of certiorari in the United States Supreme Court, the petitioner's conviction becomes final for purposes of AEDPA and the one-year period begins to run on the expiration of the 90-day period to seek that review). The AEDPA statute of limitations period thus expired on October 8, 2021, the date this Petition was filed. 28 U.S.C. § 2244. Therefore, I will treat the petition as timely. *See Wooden v. Marquis*, No. 5:18cv937, 2019 WL 3927254, at *8 (N.D. Ohio Aug. 20, 2019); *see also Williamson v. Marquis*, No. 1:18CV472, 2018 WL 10436230, at *21 (N.D. Ohio Nov. 6, 2018).

*Stansell* does not, however, appear to alter the additional procedural barriers to habeas relief. This becomes particularly relevant in the case of procedural default, whereby a claim may be dismissed for failure to present it fairly to the state courts. So, while the statute of limitations restarts on the imposition of a "worse-than-before" sentence, in this scenario the claims presented in a subsequent petition still need to comport with the ordinary rules, meaning the petitioner must comply with state procedural rules in presenting his claim to the appropriate state court and utilize ordinary state appellate procedures. The exhaustion and procedural default slates are not "wiped clean" in the same way the statute of limitations is. As the *Stansell* Court explained:

> Any fear of "abusive claims," moreover, "is greatly exaggerated" given the number of other procedural obstacles that limit habeas relief. Petitioners will still have to comply with procedural default and exhaustion requirements. And if, after the entry of an intervening judgment, they bring the same claims they raised in an earlier petition, "[i]t will not take a court long to dispose of [those] claims where [it] has already analyzed the legal issues" in an earlier decision.

828 F.3d at 419 (citations omitted). Therefore, although Mr. Krug may bring this Petition under *Stansell*, his grounds for relief are still subject to the exhaustion, procedural default, and non-cognizability hurdles.

**Procedural Default**

Before addressing each ground individually, Mr. Krug preemptively argues that because of his actual innocence, at least three of his ten grounds should be considered despite being subject to procedural default. (ECF #1-2 at PageID 25-26). But he fails to identify which three grounds he believes are potentially defaulted and should be considered. (*Id.*) ("Petitioner also raises [] three claims which this court should consider . . . the first two of those grounds for relief, arising out of Petitioner's New Trial procedure . . . .").

Assuming "the first two" of the grounds "arising out of Petitioner's New Trial procedure" means the two assignments of error on appeal from the trial court's denial of Mr. Krug's motion for leave to file a motion for new trial, those grounds are as follows:

1.  The trial court abused its discretion when it denied defense counsel an opportunity to review partial transcripts to the grand jury proceedings and refused to seal them in the record for appellate review in violation of the Sixth and Fourteenth Amendments

2.  The trial court erred when it denied defendant's motion for leave to file a delayed motion for a new trial because it ignored the burden shifting in self-defense and neglected its role in the suppression of the newly discovered evidence rendering its decision unreasonable, arbitrary, and unconscionable in violation of the Fifth, Sixth and Fourteenth Amendments.

(ECF #5-1 at PageID 369-70). The first loosely tracks Ground Seven in this petition, which asserts ineffective assistance of counsel for failure to obtain limited portions of grand jury proceedings. The second matches Ground Two, which challenges Mr. Krug's burden to show how he acted in self-defense.

I cannot determine from Mr. Krug's brief the third ground he believes should still be considered if subject to procedural default. He identifies only one ground by its substance in this

argument, and does not explain why it should not be dismissed as defaulted in light of impossibility, futility, or a fundamental miscarriage of justice:

> Petitioner Krug's final ground for relief arises out of the repeat violent offender specification under which he is serving an additional twenty-year sentence. Here, the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, USC 2254 (D)(2).

(*Id.* at PageID 25). Although Mr. Krug asserted the substance of this claim in Ground Nine, he confuses the standard for excusing procedural default with the standard for habeas relief and provides no argument as to why it should not be defaulted.

At this outset, Mr. Krug makes no developed argument with regard to any ground as to why any defaulted claims should be considered, and fails to set forth any evidence of actual innocence. In a "catch-all," he merely states: "this Court should exercise its equitable powers to review any of the claims for relief that this Court determines are procedurally defaulted in order to avoid a fundamental miscarriage of justice." (ECF #1-2 at PageID 26). But habeas petitioners cannot overcome procedural default merely by relying on conclusory assertions of cause and prejudice; instead, they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.")).

Similarly, Mr. Krug cannot rely on ineffective assistance of appellate counsel as cause because the ineffective assistance claim is also defaulted for failure to raise it in his Ohio Appellate Rule 26(B) application to reopen an appeal proceeding. (N.D. Ohio Case No. 11-cv-0074-SL, ECF

#9-5 at PageID 676-78). Because he has not provided developed argument, he fails to show actual innocence under *Bousley*. 523 U.S. at 623. I therefore decline to find that any grounds are excused from procedural default based on Mr. Krug's actual innocence, which he has failed to establish.

I.      **Ground One**

Mr. Krug's first ground argues the Ohio Supreme Court's holding in *State v. Fischer*, 942 N.E.2d 332 (Ohio 2010), is inconsistent with federal law and violates due process. (ECF #1, PageID 6). The State argues Ground One should be dismissed as improperly pled pursuant to Rule 2(c) of the Rules Governing Section 2254 proceedings because Mr. Krug failed to include this claim in the narrative discussion attached to his petition. (ECF #5, PageID 90-91 n.9).

In pertinent part, Rule 2(c) requires a petition "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Rule 2(c)(1) & (2). The rules governing habeas petitions do not require federal courts to review the entire state court record to determine whether facts supporting the grounds for relief exits. *Pointer v. Richards*, No. 1:17CV2048, 2018 WL 3029137, at *9 (N.D. Ohio May 25, 2018) (citing *Adams v. Armontrout*, 897 F.2d, 332, 333 (8th Cir. 1990)). Mr. Krug provided no facts or explanation supporting the ground that the Supreme Court of Ohio's holding in *State v. Fischer* is "inconsistent with federal law and violates due process." (ECF #1, PageID 6). Nor does his supporting brief provide any explanation or development of this argument.

Therefore, I recommend the District Court find Ground One waived.

## II. Ground Two

In his next ground, Mr. Krug argues that "Second Amendment and due process rights are denied when the defendant is shouldered with the burden to show how he acted in self-defense by a preponderance of the evidence." (ECF #1 at PageID 8).

### A. Procedural Default

The State argues Ground Two is procedurally defaulted. (ECF #5 at PageID 90). Because Mr. Krug failed to raise the argument in his first direct appeal, the Eleventh District considered it barred by *res judicata* when he raised it in his appeal from resentencing, which the State argues constitutes an adequate and independent ground foreclosing habeas review. (*Id.*) (citing *Hartman v. Bagley*, 492 F.3d 347, 357-58 (6th Cir. 2007); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998)).

In his Traverse, Mr. Krug argues the claim was raised as the Third Ground on his direct appeal. (ECF #9 at PageID 646). As support, he cites to ECF #7-1, which does not exist, and directs the Court to PageID 257, which, even in the state court record found at ECF #5-1, is not the correct document. (*Id.*). Presumably, Mr. Krug intended to cite ECF #9-5 at PageID 257 in his previous habeas petition before Judge Lioi, in which he asserted the following in his third assignment of error on direct appeal:

> **THIRD ASSIGNMENT OF ERROR**: The Trial Court erred when it refused to submit defendant-appellant's proposed jury instruction on accident in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

(N.D. Ohio Case No. 11-cv-0074-SL, ECF #9-5 at PageID 257). But on its face, this is not the self-defense claim he now makes in Ground Two of this Petition. Similarly, the Traverse also claims

Ground Two was raised as Proposition of Law No. II on direct appeal to the Supreme Court of Ohio. (ECF #9, PageID 646). Again, that proposition actually read: "the trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence." (N.D. Ohio Case No. 11-CV-00074-SL, ECF #9-6, PageID 378). Mr. Krug's misrepresentations do not demonstrate that he can avoid procedural default because he preserved his claims compliant with Ohio appellate procedures—rather, it shows that he failed to do so. *Williams*, 460 F.3d at 806.

As noted above, Mr. Krug failed to provide developed argument as to why any defaulted ground should be excused due to claimed actual innocence. Therefore, I recommend the District Court dismiss Ground Two as procedurally defaulted.

### B.    Merits

Even if it were not defaulted, Ground Two has no merit. The Eleventh District addressed the merits of this claim and summarily rejected it:

> [¶ 22] Moreover, although barred by the doctrine of res judicata, we note Mr. Krug's argument as to the constitutionality of R.C. 2901.05(A) in light of the Supreme Court of the United States' decision in *Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637, (6th Cir. 2008) was recently addressed and dismissed by the United States Court of Appeals for the Sixth Circuit in *Warmus v. LaRose Warmus v. LaRose*, 6th Cir. No. 17-3196, 2017 U.S. App. LEXIS 28075, 2017 WL 7796291 (Sept. 28, 2017).

> [¶ 23] The Sixth Circuit explained: "[Appellant] relied on *District of Columbia v. Heller*, supra, to argue that Ohio Revised Code 2901.05(A) unconstitutionally places the burden of proof on defendants to demonstrate self-defense. The claim does not deserve further consideration. [Appellant] acknowledges that * * * the Supreme Court upheld the Ohio law in *Martin v. Ohio*, 480 U.S. 228, 236, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987). Furthermore, *Heller* concerned the right to possess firearms in the home and did not address the burden of proof regarding self-defense." *Id.* at 3.

[¶ 24] In further support of his argument, Mr. Krug points to Ohio's new self-defense statute, R.C. 2901.05, effective March 28, 2019. *See* Am.Sub.H.B. No. 228, Section 1, 2901.05 (Dec. 27, 2018). Simply because the General Assembly has shifted the burden of proof going forward with evidence of an affirmative defense of self-defense, defense of another, or defense of the accused's residence/vehicle, it does not equate to finding the former statute unconstitutional. Indeed, in *Martin*, supra, the Supreme Court of the United States expressly upheld Ohio's law of self-defense, stating "the common-law rule was that affirmative defenses, including self-defense, were matters for the defendant to prove. 'This was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified.' * * * We are aware that all but two of the States, Ohio and South Carolina, have abandoned the common-law rule and require the prosecution to prove the absence of self-defense when it is properly raised by the defendant."* * * We are no more convinced that the Ohio practice of requiring self-defense to be proved by the defendant is unconstitutional than we are that the Constitution requires the prosecution to prove the sanity of a defendant who pleads not guilty by reason of insanity." *Id.* at 235-236.

(ECF #5-1 at PageID 549-50).

The Eleventh District's analysis is not contrary to nor involves an unreasonable application of clearly established federal law. It did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, if not defaulted, I recommend the District Court deny Ground Two on its merits.

## III.   Ground Three

In Ground Three, Mr. Krug argues "trial counsel's failure to request a curative instruction based on the spoliation of evidence resulting from failure to collect and preserve blood pooled at scene is ineffective assistance of counsel." (ECF #1-2 at PageID 29). Photos of the scene depicted three large puddles of blood, swabs of which did not contain sufficient blood for DNA testing. (*Id.* at PageID 30). Mr. Krug argues identifying the blood was important to showing the locations of Mr. Layne and Mr. Krug's bodies, which were disputed at trial. (*Id.*).

41

A.      Procedural Default

The State argues Ground Three is also procedurally defaulted because, like Ground Two, the Eleventh District considered it barred by *res judicata* on appeal from resentencing because he could have raised it in his original direct appeal. (ECF #5 at PageID 97).

In his Traverse, Mr. Krug argues the state court's application of *res judicata* was not specific enough to bar habeas relief on procedural grounds. (ECF #9 at PageID 653). He quotes the following explanation, which he attributes to *Williams v. Coyle*, 260 F.3d 684 (6th Cir. 2001): "Because the finding of the Ohio courts that a claim is barred by 'res judicata' has several possible meanings, that finding with nothing else will not result in a procedural default finding by the federal court." (ECF #9 at PageID 653). That language is not found within *Williams v. Coyle*, nor can I find it in any other federal or state court decision. It is true in *Williams* the Ohio courts did not provide the habeas court with "enough analysis to hold that Williams defaulted his claim" because they did not explain how later-discovered evidence could have been presented in an earlier appeal. *Williams*, 260 F.3d at 696.

Even so, the state court's application of *res judicata* to Ground Two was neither unclear nor unspecific. The Eleventh District emphasized *res judicata* bars re-litigation of a matter that was raised or could have been raised on direct appeal. (ECF #5-1 at PageID 549). The second variant of *res judicata,* barring litigation of a matter that could have been raised on direct appeal, serves as the basis for procedural default. *Lundgren,* 440 F.3d at n.2, "Upon review, we find that Mr. Krug failed to raise any argument that concerns the sentencing entry that corrected the imposition of his post-release control sanctions." (ECF #5-1 at PageID 548). This would include the claim that trial

42

counsel acted ineffectively when failing to request a spoliation instruction. Unlike *Williams*, this claim did not involve later-discovered evidence that the Ohio courts failed to analyze properly.

Additionally, Mr. Krug may not rely on ineffective assistance of appellate counsel as cause to excuse the default because he did not bring an ineffective assistance claim in his Ohio Appellate Rule 26(B) application. (N.D. Ohio Case No. 1:22-cv-00074-SL, ECF #9-8 at PageID 676-78). Here, *res judicata* operates as an adequate and independent state procedural rule foreclosing habeas review. I recommend Ground Three be dismissed as procedurally defaulted.

### B.     Merits

Mr. Krug argues his defense turned on his credibility and establishing the source of the large puddle of blood at the crime scene would have bolstered his credibility and impeached the testimony of state witnesses. (ECF #9 at PageID 652). He argues reasonable fact finders would give weight to the State's spoliation of the blood puddles, and trial counsel's failure to request an instruction on spoliation constitutes ineffective assistance. (ECF #1-2 at PageID 32).

Under *Strickland*, Mr. Krug must show counsel's performance was both deficient and prejudiced the defense. 466 U.S. at 687. Spoliation is "[t]he intentional destruction, mutilation, alteration, or concealment of evidence[.]" *State v. Drummond*, 31 N.E.3d 1216, 1227 (Ohio Ct. App. 2015) (quoting *Black's Law Dictionary* 1133 (7th ed. 2000)). In Ohio, a spoliation instruction allowing a jury to make a negative inference from the loss or destruction of evidence is a civil instruction, generally inapplicable to criminal cases. *Id.* at 1227-28 (citing *Ohio v. Pace*, No. 2012CR00008, 2013 WL 2459877, at *3 (Ohio Ct. App. May 28, 2013) (spoliation is inapplicable in a criminal case)).

Because spoliation is inapplicable in criminal cases, trial counsel's decision not to request a spoliation jury instruction was appropriate and cannot be deficient or prejudicial under *Strickland*. Accordingly, if Ground Three is not procedurally defaulted, I recommend it be denied on the merits.

## IV.    Ground Four

Next, Mr. Krug argues trial counsel was ineffective for failing to object to "an overly broad duty to retreat instruction, requiring [Mr. Krug] to prove he did not violate his duty to retreat even when no deadly force was used and no such duty existed." (ECF #1-2 at PageID 33).

### A.    Procedural Default

Like Grounds Two and Three, the State argues *res judicata* bars this claim. (ECF #5 at PageID 101). Once again, Mr. Krug cannot rely on ineffective assistance of appellate counsel as excuse for the default due to his failure to raise that claim in his Ohio Appellate Rule 26(B) application. (N.D. Ohio Case No. 1:22-cv-00074-SL, ECF #9-8 at PageID 676-78).

Mr. Krug responds only that he first presented this claim in the appeal of his re-sentencing and "exhausted" the claim to the Supreme Court of Ohio, which declined jurisdiction. (ECF #9 at PageID 654).

Because this claim arose at trial but was not presented to the Ohio courts until Mr. Krug's appeal from his resentencing nearly ten years after his conviction, and for the same reasons explained in Grounds Two and Three, I recommend Ground Four be dismissed as defaulted.

### B.    Merits

The trial court instructed the jury on the affirmative defense of self-defense as follows:

The defendant claims to have acted in self-defense. To establish a claim of self-defense, the defendant must prove by the greater weight of the evidence that:

(1) he was not at fault in creating the situation giving rise to the event on December 30, 2007 at the Lake Effects bar; and

(2) he had reasonable grounds to believe and an honest belief; even if mistaken, that he was in imminent or immediate danger of death or great bodily harm, and that his only reasonable means of retreat or escape or withdrawal from such danger was by the use of deadly force; and

(3) he had not violated any duty to retreat or escape or withdraw to avoid the danger.

The defendant had a duty to retreat if he:

(1) was at fault in creating the situation giving rise to the event on December 30, 2007 at the Lake Effects bar; or

(2) did not have reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of death or great bodily harm or that he had a reasonable means of escape from that danger other than by the use of deadly force.

The defendant no longer had a duty to retreat if:

(1) he retreated or escaped or withdrew from the situation, or reasonably indicated his intention to retreat or escape or withdraw from the situation and no longer participate in it; and

(2) he then had reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of death or great bodily harm; and

(3) the only reasonable means of escape from that danger was by the use of deadly force, even though he was mistaken as to the existence of that danger.

Words alone do not justify the use of deadly force or any force. Resort to such force is not justified by abusive language, verbal threats or other words, no matter how provocative. In deciding whether the Defendant had reasonable belief that he was in imminent or immediate danger of death or great bodily harm, you must put yourself in the position of the Defendant with his characteristics, his knowledge or lack of knowledge, and under the circumstances and conditions that surrounded him at the time.

45

(N.D. Ohio Case No. 1:11-cv-00074-SL, ECF #9-17 at PageID 2285-87).

Mr. Krug's brief to this Court provides no comprehensible argument why the above instruction is inappropriate. Instead, in its entirety his brief asserts:

> The state court relied on an unreasonable application of federal law when it ruled in favor of the prosecution's argument. In the lower courts appeal jury instruction provided, then correctly recites the Petitioner's duty under the law in page 19, line 2 of its response, saying "Petitioner's duty to retreat applied at the time that he knifed his victims. In this sentence, the state correctly applied the law as set forth in the relevant case holdings and set forth in Petitioner's Merit Brief. In light of the law, and the state's concession that Petitioner had no duty to retreat until it "applied at the time he knifed his victims," then an instruction that does not correctly set forth that duty is not correct under the and trial counsel's failure to object prejudiced the Petitioner to such an extent that but-for the overly broad instruction, the outcome of the case would have been different.

(ECF #1-2 at PageID 33). To the extent the above is even comprehendible, it lacks record citations, any applicable precedent, and fails to explain why Mr. Krug believes the jury instruction on self-defense and duty to retreat were overbroad. In any event, the instruction as given is nearly identical to the Ohio Judicial Conference's General Criminal Trial instructions. *See* 2-OJI-CR 421.19, *Self defense against danger of death or great bodily harm*, [Rev. 9/12/20]. Ground Four is thus without merit and I recommend it be denied if considered on the merits.

## V.      Ground Five

Mr. Krug next argues the trial court violated his constitutional rights by "arbitrarily denying him the testimony of a favorable witness for the purpose of presenting expert testimony to interpret toxicology results." (ECF #1-2 at PageID 34). Specifically, the trial court barred admission of expert testimony interpreting toxicology reports, which Mr. Krug believes was necessary in assessing the victims' mental state and credibility. (*Id.*).

### A. Procedural Default

Again, the State argues Ground Five is procedurally defaulted based on the Eleventh District's finding that it is barred by *res judicata*. (ECF #5 at PageID 105). Mr. Krug argues he preserved the claim by asserting it in his motion for leave to add additional claims to his post-conviction petition and his petition for postconviction relief. (ECF #9, PageID 658). But in those instances, he argued his trial counsel was ineffective for failing to obtain Jason Reihner's toxicology results. (N.D. Ohio Case No. 1:11-cv-00074-SL, ECF #9-7 at PageID 527).

First, Ground Five is not asserted as an ineffective assistance of counsel claim, but rather the "right to present a defense," meaning the issue was not properly presented to the state courts. (ECF #1-2 at PageID 34). Second, even if it was, ineffective assistance of trial counsel should have been raised at the first instance in Mr. Krug's direct appeal. Third, if appellate counsel acted ineffectively by not bringing the claim on direct appeal, Mr. Krug should have asserted an ineffective assistance of appellate counsel claim in his post-conviction relief proceedings, which he did not. (N.D. Ohio Case No. 1:22-cv-00074-SL, ECF #9-8 at PageID 676-78).

Therefore, like Grounds Two, Three, and Four, I recommend Ground Five be dismissed as procedurally defaulted having been barred by *res judicata*.

### B. Merits

The State argues the admissibility of expert testimony under the Ohio Rules of Evidence is not reviewable in a habeas corpus action. (ECF #5 at PageID 105) (citing *Pudelski v. Wilson*, 576 F.3d 595, 612 (6th Cir. 2009) (admissibility of coroner's expert testimony under Ohio Rule 703 not reviewable in habeas proceeding); *Page v. Metrish*, No. 2:06-CV-12229, 2008 WL 2217933, at *8 (E.D. Mich. May 27, 2008) (alleged error in admission of expert testimony not cognizable on

habeas review)). Mr. Krug argues the exclusion of the expert testimony interfered with his "right to present a defense" under the Sixth and Fourteenth Amendments. (ECF #1-2 at PageID 34). He cites *In re Oliver*, 333 U.S. 257, 273 (1948), and *Washington v. Texas*, 388 U.S. 14, 19 (1967), as support that the right to offer testimony of witnesses and to compel their attendance is "in plain terms" the right to present a defense.  (ECF #1-2 at PageID 35-36).

The right Mr. Krug describes is not absolute. Exclusion of evidence is unconstitutionally arbitrary or disproportionate only where it has infringed on a weighty interest of the accused. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). State and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials, and such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purpose they are designed to serve. *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington*, 388 U.S. at 22-23).

Mr. Krug characterizes the testimony as "favorable expert toxicology evidence" that would shed light on the at-issue mental state of the victims by interpreting "obscure, scientific calculations, which a lay juror is likely unable to fully understand" (ECF #1-2 at PageID 34, 37). But the victims admitted to ingesting alcohol and drugs and not remembering various details of the evening; Jason Reihner testified he consumed seven beers that evening and admitted he could not recall portions of the night (N.D. Ohio Case No. 1:11-cv-00074-SL, ECF #9-11, PageID 1345, 1351), Howard Layne testified to having at least five beers prior to the incident (*Id.*, ECF #9-12, PageID 1473), and hospital records the State introduced indicated one victim had a blood alcohol level of 1.1, while the other had a blood alcohol level of 1.7 and THC in his system. (ECF #5-1 at PageID 513-14).

Considering the above, I do not find exclusion of the toxicology testimony unconstitutionally arbitrary or disproportionate under *Scheffer*. I recommend Mr. Krug's Ground Five, if not procedurally defaulted, be denied on its merits.

## VI.  Ground Six

In Ground Six, Mr. Krug argues the trial court erred in sentencing him to maximum consecutive sentences, as those findings are not supported by the record, contravene Ohio's sentencing statutes, and therefore violate his federal due process rights. (ECF #1-2 at PageID 38).

Mr. Krug argues:

> Here the trial court stated that there are not any factors which make the crime less serious. This simply is not true. Testimony and evidence came in to show that Petitioner was harmed during the altercation that gave rise to these charges. Further, the trial court compares the Petitioner to a "psychopathic killing machine." Despite the fact that absolutely nothing in the record supports any finding of mental health issues, nor an intent to kill, nor a record involving any kind of homicide.

> Here, there was no pre-sentence investigation completed. The trial court also characterizes Petitioner's claims of self-defense as "victim blaming." In so doing, the trial court is effectively considering the Petitioner's exercise of his right to put on a defense as an aggravating factor in favor of a more serious sentence.

(*Id.* at PageID 39-40).

### A.  Procedural Default

For the fifth time, Mr. Krug argues he may overcome procedural default by having raised a claim for the first time in his resentencing appeal. (ECF #9, PageID 664). As explained previously, Mr. Krug failed to preserve the claim using Ohio's ordinary appellate procedures and cannot rely on ineffective assistance of counsel because that claim is also defaulted. The Eleventh District too, found this claim barred by *res judicata*. For the same reasons explained above, I recommend the District Court dismiss Ground Six as procedurally defaulted.

B.      Merits

The State argues an error of state law that does not violate a specific constitutional right is not cognizable in habeas corpus unless it results in a proceeding that is fundamentally unfair and thus violates due process. (ECF #5 at PageID 108-09).

A state court sentencing decision and claims arising from that decision generally do not raise a cognizable constitutional claim. *See, e.g., Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[F]ederal courts cannot review a state's alleged failure to adhere to its own sentencing procedures."); *Carrington v. Sloan*, No. 1:16 CV 160, 2017 WL 9473078, at *8 (N.D. Ohio Mar. 21, 2017) ("Errors by state courts in applying state sentencing law are not cognizable in federal habeas proceedings, absent a showing that the state court decision rendered the entire process fundamentally unfair."), *report and recommendation adopted*, 2017 WL 2456996 (N.D. Ohio June 6, 2017).

Mr. Krug emphasizes where a state has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. (ECF #1-2 at PageID 38) (citing *Hicks v. Oklahoma*, 448 U.S. 343, 346 (1980)). But the original imposition of the sentence was at the discretion of the trial court judge—not the trial jury. (N.D. Ohio Case No. 1:11-cv-00074-SL, ECF #9-18 at PageID 2408). The same is true for his resentencing. (ECF #5-2 at 616).

Mr. Krug's brief strategically misrepresents *Hicks* when arguing "Ohio statutes create a liberty interest in having the sentencing judge or panel make particular findings, and Petitioner has 'a substantial and legitimate expectation that he will be deprived of his life only to the extent determined by [the trial court judge] in the exercise of its statutory discretion.'" (ECF #1-2 at

50

PageID 38) (quoting *Hicks*, 447 U.S. at 346). The bracketed language in *Hicks* actually reads "the jury" rather than "the trial court judge." *Hicks*, 447 U.S. at 346.

The distinction is important because *Hicks* involved the statutory right to have a jury fix the defendant's punishment in the first instance. *Hicks*, 447 U.S. at 347. "*Hicks* is obviously distinguishable from the instant case. Oklahoma law provides defendants an absolute statutory right to a sentence imposed by a jury. Ohio law does not. That is reason enough to find [such a habeas ground] meritless." *Shie v. Smith*, No. 1:08 CV 194, 2009 WL 385617, at *5 (N.D. Ohio, Feb. 13, 2009). Further, "it is inconceivable that the Ohio Supreme Court would find that [Revised Code] § 5145.01 creates a liberty interest in concurrent sentence." *Id.* Because of this, federal and state courts in Ohio have rejected arguments that a defendant has a state-created "liberty interest" in Ohio's sentencing statutes. *Miller v. Jackson*, No. 3:08CV2098, 2010 WL 2836770, at *5 (N.D. Ohio May 13, 2010), *report and recommendation adopted*, 2010 WL 2836759 (N.D. Ohio Jul. 19, 2010).

Considering this precedent, I reject Mr. Krug's argument that his constitutional rights were violated by the imposition of maximum consecutive sentences and recommend the District Court deny Ground Six.

## VII.    Ground Seven

Next, Mr. Krug argues the withholding of the transcript of his grand jury proceedings constitutes an unreasonable application of federal law. (ECF #1-2 at PageID 40). He frames the claim as one for ineffective assistance of counsel but makes no mention of counsel in his argument. Rather, Mr. Krug emphasizes a defendant has the right to exculpatory evidence, and trial courts can reveal grand jury testimony, or relevant portions thereof, to impeach a witness, to

refresh recollection, or to test credibility. *Dennis v. United States*, 384 U.S. 855, 870 (1966). Mr. Krug argues that because Mr. Nichols stated in his affidavit that he agreed to drive Mr. Krug home before the stabbing, Mr. Krug could have used Mr. Nichols's testimony to show he satisfied his duty to retreat. (ECF #1-2 at PageID 41).

### A. Procedural Default

Mr. Krug states Ground Seven "was exhausted in state court but could not have been raised within the time set forth for filing a Petition for Habeas Corpus pursuant to USC 2254 and *United States v. Clay* due to impossibility." (ECF #9 at PageID 671). Mr. Krug did not provide a citation for "*United States v. Clay*," but given the overall context, I presume he intended to refer to *Clay v. United States*, 537 U.S. 522 (2003), which holds that for purposes of starting the clock on § 2255's one-year limitations period, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction. I analyze this argument accordingly.

This issue was raised for the first time in Mr. Krug's delayed motion for new trial but was not framed as an ineffective assistance of counsel claim; Mr. Krug he did not discover the issue regarding Mr. Nichols's grand jury testimony within 120 days of the verdict, the time period for filing a motion for new trial. (ECF #5-1 at PageID 253-62). In his appeal of the denial of his motions to file a delayed motion for a new trial and for the disclosure of Mr. Nichols's grand jury testimony, Mr. Krug failed to assert an ineffective assistance of counsel claim. (ECF #5-1 at PageID 368-87). In his first assignment of error, he challenged only the underlying claim that the trial court violated his constitutional rights by denying him Mr. Nichols's grand jury testimony. (*Id.* at PageID 375). In his second assignment of error, he argued that the trial court committed

constitutional error by denying his motion for leave to file a motion for a new trial ignoring his burden of proving self-defense and suppressing newly discovered evidence. (*Id.* at PageID 378-79). He alleged trial court error, not error by his counsel.

To the extent his claim of ineffective assistance relies on evidence outside the record, he could have filed a post-conviction petition asserting that claim. Ohio law requires post-conviction petitions be filed no later than 365 days after the date on which the transcript is filed in the court of appeals in the direct appeal of the judgment of conviction. Ohio Rev. Code § 2953.21(A)(2). A court may consider a petition filed after the deadline has expired if (1) the petitioner shows he "was unavoidably prevented from discovery of the facts upon which he must rely to present the claims for relief," or "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right;" and (2) the petitioner shows "by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found him guilty of the offense of which he was convicted." Ohio Rev. Code § 2953.23.

Mr. Krug cannot meet the statutory exceptions for filing a late petition and therefore no longer has a state court remedy available to pursue his ineffective assistance of counsel claim. Presumably, he was privy to this claim at the latest in 2018 when he pursued a motion for a new trial and release of grand jury testimony. Because exhaustion would be futile, the District Court should presume that the state court would apply its time bar and, on that basis, the claim is procedurally defaulted. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013). As such, I recommend the District Court dismiss Ground Seven as procedurally defaulted.

B.     Merits

The Eleventh District addressed this question in Mr. Krug's appeal from the judgment

denying both his motion for leave to file a delayed motion for new trial and motion for disclosure

of partial transcript of grand jury proceedings, as follows:

> In this case, the trial court conducted an *in camera* inspection of the grand jury
> testimony. The court determined that Nichols testified before the grand jury on or
> about February 8, 2008, and that his testimony unequivocally did not exculpate
> appellant. Appellant moved the trial court to disclose the grand jury proceedings.
> Appellant requested a copy of Nichols' testimony to appeal the court's decision and
> to demonstrate that his trial counsel was ineffective. In its January 8, 2018
> judgment denying appellant's motion for disclosure of grand jury proceedings, the
> trial court stated:
>
>> "Neither claim amounts to a particularized need. Regarding the first, the
>> court finds that the details of Nichols' testimony are unimportant for
>> purposes of appeal. Only the gist matters, and the court unequivocally states
>> again that Nichols' grand jury testimony did not exculpate the defendant.
>> As to the second, the testimony was not available to the defendant's trial
>> attorney. Therefore, it cannot be used to prove that he was ineffective,
>> because he had no idea what Nichols told the grand jury. All counsel knew
>> at the time was that the state vouched that Nichols' testimony was not
>> exculpatory, and the defendant now knows that statement was true.
>> Knowing exactly what Nichols said will not change that fact."
>
> Upon review, appellant has failed to demonstrate that the ends of justice require
> disclosure or that he has a particularized need for Nichols' testimony. Thus, the
> trial court did not abuse its discretion in denying appellant's motion for disclosure
> of partial transcript of grand jury proceedings.

(ECF 5-1 at PageID 415-16).

The above analysis is not an unreasonable application of clearly established Federal law nor

did the adjudication result in a decision based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings. I therefore recommend the District

Court deny Ground Seven on the merits.

## VIII.    Ground Eight

Mr. Krug's Eighth Ground states: "If an officer of the court intentionally misrepresents on the record material information related to secret proceedings which cannot be known to defense, counsel for defendant is not ineffective for relying on those representations. However, counsel is ineffective for failing to investigate." (ECF #1-2 at PageID 43). Mr. Krug does not identify what intentional misrepresentation he references nor does he detail what he believes his counsel should have investigated.

I assume, as did the State, that this ground refers to the grand jury testimony referenced in Ground Seven. Mr. Krug's argument reiterates the two-step *Strickland* standard but omits any argument as to counsel's duty to investigate. (*See* ECF #1-2 at PageID 43-45).

### A.    Procedural Default

Like Ground Seven, Mr. Krug failed to raise an ineffective assistance claim based on counsel's failure to investigate in his motion for leave to file a motion for new trial. Again, because it is unlikely Mr. Krug could satisfy the exceptions for filing a belated post-conviction petition asserting this claim, the claim is procedurally defaulted.

While it was unclear whether Mr. Krug was asserting ineffective assistance of counsel for failing to investigate Mr. Nichols's testimony in the Supreme Court of Ohio, Mr. Krug did assert that counsel failed to investigate, relying on the State's representation that Mr. Nichols's testimony was unfavorable. (ECF 5-1 at PageID 423). But raising a claim solely in the Supreme Court of Ohio is insufficient to preserve the claim for habeas corpus review because that court lacks jurisdiction to consider constitutional issues not raised or considered on direct appeal. *See* Ohio

Const. Art. IV, § 2(B)(2); *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985). I recommend Ground Eight be dismissed as procedurally defaulted.

### B.      Merits

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. As already established, trial counsel could not have been ineffective in failing to investigate the grand jury testimony because he "had no idea what Nichols told the grand jury[,]" and, after *in camera* review, "Nichols' grand jury testimony did not exculpate the defendant." (ECF #5-1 at PageID 416). I therefore recommend the District Court deny Ground Eight.

## IX.    Ground Nine

Mr. Krug next argues the Repeat Violent Offender Specification cannot attach to additional sentences because the trial court failed to issue judicial fact finding as set forth in Ohio Rev. Code § 2929.14(D)(2)(a). (ECF #1-2 at PageID 45).

### A.      Cognizability

Much like Ground Five, Ground Nine relies on Ohio's interpretation of its own sentencing rules and is therefore non-cognizable on habeas corpus review. While Mr. Krug attempts to bring it under the purview of AEDPA by claiming the Eleventh District unreasonably determined the facts, that provision only applies to cognizable, constitutional claims. *See Wilson v. Corcoran*, 562 U.S. 1, 5-6 (2010) (holding that an unreasonable determination of the facts must result in a constitutional violation to be cognizable under AEDPA). Here, Mr. Krug argues that an

56

unreasonable determination of the facts resulted in the erroneous application of Ohio's repeat

violent offender statute. For the same reasons iterated with respect to Ground Five, Ground Nine

constitutes a non-cognizable matter of state law. *Sneed*, 993 F.2d at 1244. I recommend the District

Court dismiss Ground Nine as non-cognizable.

### B.     Merits

Again, the Eleventh District addressed the issue on its merits:

> As we explain above, the current R.C. 2929.14(D)(2) provides for both mandatory ((D)(2)(b)) and discretionary ((D)(2)(a)) penalty enhancement for RVO specifications. We recognize that (D)(2)(a) still requires judicial factfinding by the trial court before it exercises its discretion in enhancing the penalty for a RVO. However, a reading of the judgment entry in this case indicates that the court imposed the additional penalty under the mandatory provisions in subsection (D)(2)(b), even though it did not expressly state that all three criteria under that subsection were met.

> Although the court failed to fully articulate its analysis under (D)(2)(b), it did state that it found the defendant to be a RVO pursuant to R.C. 2941.149 and that the trier of fact found him to have caused serious physical harm to the victims. Although the court did not specifically reference criterion (ii), the parties had stipulated that Mr. Krug had two prior convictions that were offenses of violence, thus satisfying criterion (ii).

> Because Mr. Krug was given the additional penalty under the mandatory provisions, no judicial factfinding was required, and the court did not engage in such impermissible factfinding before sentencing Mr. Krug to two additional prison terms for the RVO specifications.

(N.D. Ohio Case No. 1:11-cv-00074-SL, ECF #9-6 at PageID 370-71). The Eleventh District's

conclusion is not an unreasonable application of clearly established federal law nor did the

adjudication result in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceedings. Finally, Mr. Krug offers no

developed argument supporting his conclusory assertion that the record was "entirely void of any

determination that Krug was sentenced to the RVO pursuant to the mandatory RVO provision"

(ECF #1-2 at PageID 46), especially considering the joint stipulation on his two prior convictions for violent offenses. I therefore recommend Ground Nine be denied on its merits.

## X.   Ground Ten

Finally, Mr. Krug's Tenth Ground argues the combination of errors by the trial court deprived him of a fair trial. (ECF #1-2 at PageID 47). His brief states:

> The errors, if not individually, combined to cause the trial to be constitutionally infirm. Ohio recognizes this concept. *State v. DeMarco* (1987), 31 Ohio St.3d 191. These errors, as addressed in the preceding Claims for Relief in this petition, combined to violate Krug's due process right to a fair trial and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(*Id.* at PageID 47). Mr. Krug appears to admit the issue is procedurally defaulted, explaining it "had not been exhausted." (ECF #1-2 at PageID 48).

Even still, Ohio's recognition of this claim is irrelevant; "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams*, 460 F.3d at 816 (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). I therefore recommend Ground Ten be dismissed as noncognizable.

Even if cumulative error claims were reviewable in habeas corpus, with the previous nine grounds having been found non-meritorious, their cumulative impact cannot deprive Mr. Krug of any constitutional right because they were not erroneous individually, much less cumulatively. I recommend the District Court deny Mr. Krug's Tenth Ground for relief.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant

has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Krug has not made a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether any of his ten grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court not grant Mr. Krug a Certificate of Appealability with respect to any ground.

CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend Mr. Krug's habeas petition be **DISMISSED** in its entirety. I further recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief.

Dated: September 19, 2023

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). **Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). **Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). **Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). **The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).